Oral argument not to exceed 15 minutes per side. Mr. Shad for the defendant a felon. Good morning your honors. May it please the court I'm here this morning representing Bennie Overton who is the defendant in the court below. I'd like to reserve three of my minutes for rebuttal if I may. Thank you. Morning. Morning. There are two issues which I'd like to address to the court's attention today and I'd leave the rest to the briefs unless there are any specific questions about those. The two issues which I'd like to address are number one that the district court should have allowed the defense to present a picture of the BB gun in this case and then second I would like to discuss the district court's denial of the motion to suppress the evidence that was found on May 4th in this case. So let's just talk about the BB gun. Alright. There was a stipulation. The jury knew that he had a BB gun that had been found in the house. Absolutely. Frankly I wouldn't know looking a BB gun from any other kind of gun but that's just you know my lack of education in this area. What was it that you didn't try this case did you? No. What was it that council thought the jury would possibly gain from seeing a picture of the gun? Not the gun itself but just the picture. And actually this is one you know the picture is a thousand words. This is one of those cases. The victim in this case Mr. Gore did not have a really good clear description of the gun but he said that it was dark. He said that it wasn't a revolver and he said that it had a long barrel to it. And that was the description that he gave during the trial testimony. How long a barrel did he say? He just said a long barrel. I mean that could be a long barrel. This could be a long barrel. Absolutely. And this thing was being held against his temple. It was. It was. So the only issue in this entire case at trial was is it a BB gun or was it a firearm? That was the only issue that was presented in this case. That was the critical issue for the jury to decide. What did the jury do during jury deliberations? The jury actually got back to the court and asked to see the firearm that was presented. And that was the firearm that was that they found on May 4th. So now let's back up just a minute. I've already confessed to you that I don't have much knowledge of guns. But you know if somebody holds a BB gun up here and says I want you to do this that or the other. Whether I know it's a BB gun or not. It could it could do some damage if it fired. If it's fired it could do damage. What makes that any less of a firearm then? Is there a law that says it can't be a BB gun is not a weapon? Yeah the government can actually conceded at the trial that that it wouldn't be a firearm if it was a BB gun. They conceded that. So so it all comes down to was a BB gun used or was a firearm? Let me ask one follow-up question and then I'll quit harassing you. You do know that and that's a mark of a good lawyer, good advocate. What difference does it make if if it was a toy gun if as the victim I think it is a gun? Because the statute and especially the 924 C statute requires that it be a firearm and a firearm that's defined under federal law. Okay. And so that and now with the carjacking statute we may we may have an issue because you know as I've said it could be a wood yeah but but so the issue but the issue all boiled down to was it a BB gun or was it a what is it a firearm in the 924? And I would submit I would submit the carjacking as but but especially the 924 especially the 924. Back to your picture in a thousand words. Yes. I guess I'm not totally following that. I mean let's accept it's all whether it's a BB gun or not but what's what more do you get out of the fact that everyone agreed a BB gun was found in the apartment so I just I'm really struggling with how the arguments are different. Had I been over to I mean I would have made the same I just would have pushed it the same way and I mean I I don't know the difference between waving a picture or waving a stipulation and the point is there was one in the apartment that's what generates the possibility for confusion and then you're off to the beyond a reasonable doubt arguments. I think that the if you could take a look at the at the firearm that was introduced into evidence and you take a look at the picture of the BB gun that was and put them side-by-side each other you would see. Was there a proffer is that picture in the record? That picture was was placed into the record that is correct. Is it in the record that we've got? It is not in the record I would be happy to make it part of a joint appendix or provide it to the court I have it with me today so that you can see that I actually have a picture of both the firearm and the BB gun with me today see a color picture of each so you can see the similarities but it but it and both of those were exhibits at trial one was introduced and the other was a proffer the other one the the the actual firearm was introduced the one that was so I only have a picture of the firearm I don't have the actual firearm right the picture of the BB gun was was introduced as to protect the record but it was never obviously introduced into before the jury with respect to the gun that was found at the home yes was the victim able to identify that weapon as the as resembling the one that was held to his head well the the the firearm that was introduced actually wasn't found at the home that was found at the gas station underneath him and in the the victim was never and did never identify that as the weapon that was used that is that is it was never presented to him there was a pretrial motion I guess there was an issue at one of the preliminary hearings as to whether or not he could identify that as the weapon that was used and so there was actually a pretrial motion to an in limine motion to exclude his identification because he couldn't identify it as the weapon and the government conceded that they wouldn't ask him to do it and they in fact didn't at the trial they did not ask him to to identify that as the weapon that was used now the government contends that part of the reason the judge was right to exclude this photo of the BB gun is because the defendant only sought to introduce the photo to corroborate you know his testimony and that's in and I have a I have a this is my very big sticking point with this entire issue because it was the government that opened the door to this evidence there is no question that it was the government that opened the door to this evidence and so on so you have that and we have the case law that says that when a party opens the door to otherwise inadmissible evidence the other party has every right to be able to bring in evidence to to show it to clear up any any problems that come with it was a result of that but the government opened the door the by alleging that there wasn't any BB gun they during their cross-examination some page 740 of the transcript in this of the its page ID 740 they actually infer to the jury they actually make the statement well where is this BB gun you know they actually go through a cross-examination to him say you say it was a BB gun before the stipulation or was it was before the stipulation and the reason they had to make the stipulation was because they'd enter they had entered into this they they knew or should have known that there was a BB gun that they had an evidence but what if but what if this happened they they know there's a BB gun and in fact they know there are a lot of other guns in his house that they found is is that correct that is true and do they know that he's gonna that he his attorney at least is going to show up in court and say it wasn't it wasn't the gun you found in the car when you found me it was a BB gun and there whoa the government says you're gonna try to take the position that this was only a BB gun is that what happened I think that the I think that the government was unaware that that was the defense yes yes so okay so that's why the stipulation a lot of people well and and you know in this case everything was conceded but for that fact he admitted that he was there he admitted that he went into the car he admitted that he ultimately took the car he apologized gun does he say it was that was in the car the BB gun he says he used a BB gun that night the the weapon in the car in the car five days later I believe it was a friend of yeah and and there were other firearms as well but but here's another problem about the fact that if you let the BB gun in the government's entitled to introduce the other stuff found in the apartment in my my answer to that is under what legal theory stating under what legal theory would that allow to be introduced simply wait wait wait am I right in remembering there were other guns in the apartment absolutely but that doesn't mean that they're automatically admissible and okay so if other guns in the house the victim says he held a gun to my head and took my car okay so isn't it just as likely in the mind of a jury that one of the other many guns found in the house was the gun held to his head as it is at the BB gun no your honor because actually and I think the government will concede this the other guns that were found in the apartment were did not follow in line with what he said that the gun was they were like either rifles or different things like that they would not have been related to the carjacking that evening and the BB gun was wasn't was less similar to a rifle than to absolutely and if if you see the pictures it was so similar to the picture of the firearm that a jury in the jury in this case did have some doubt they actually had some reasonable doubt as to this issue because they in fact the only issue is is it a firearm was it a BB gun they asked to see that firearm the only thing that was introduced in the case they asked to see it during their deliberation so they were at least contemplating this issue the the the Blackwell case says that when you when you're talking about failure to present a defense the issue is whether or not the omitted evidence would have created reasonable doubt you take a look at these two pictures side-by-side you'll have no question but that there is some reasonable doubt once you take a look at those and the jury actually struggled with that I have a minute nine seconds left and I promised my client I would talk about the suppression issue and I'd like to get to that and that is that the the evidence in this case is clear that the defendant was detained and he was detained for a period of time in which we submit the EMTs had no basis to detain can I just make sure I'm understanding your response before yes letting in the other guns so you started by saying I don't understand why the government would get to do that and I guess my reaction is well wait a second if the point is I had this BB gun that's the gun that was used I want to tell them I had this in the apartment that's confirms that that's possible it sure seems like pretty fair game that you can let the other stuff in so that's my answer or initial response to your what theory and then you seem to shift well who cares because none of these guns were really similar it sounds like that's your real point no actually in it and I'd like to use a the government the the court is the one that made the threat that hey if you allow in this BB gun they can bring in the rest of it I'm shutting the door now but if you reopen it by putting in this picture the BB gun all the other weapons that they found in the apartment come in I'm just I would submit yeah and I but it sounds reasonable but if you think about it what is the legal or evidentiary basis to allow in those other firearms the government's going to Overton's using is hey I said it was a BB gun and here's the proof I had a BB gun in my apartment you're allowed to respond by saying you had 55 guns in your apartment you're just taking the most innocent gun and saying that was the one used it seems to me incredibly obvious well you get to do that it's just like picking out one sentence of a statement and trying to keep the government from introducing the entire statement yeah could he put let's say he had a toy gun it was paper it was just ridiculous it was something that you know a five-year-old would have and he wants to introduce that and then he has ten real guns and the government says well if you're gonna put that in we get to tell the jury you also had ten real guns as opposed to leaving the impression that all you carry around is paper guns well surely you could correct that misimpression we have to put it the prism of were any of the other firearms that were found in the apartment possibly the firearm that was used at the carjacking because that's the only issue this is what I thought the real point was right so that's what I'm trying to tell you I don't think this first argument works so the second argument is okay fine in the abstract you can try to correct that misimpression but the only thing that would be relevant would be a gun that's like the gun described by the victim that correct it's not that it looks like a BB gun it's that it's like the gun and you see you say we'll hear from the government but you say the other guns seized don't possibly come within the realm of being like the gun the victim described that is correct that is correct and and so the only way that those get guns get in otherwise is some sort of a 404 B theory that oh well this guy yeah make your argument thank you thank you so with regards to the Fourth Amendment argument he was detained and he was detained for at a period of time before they saw the butt of the firearm in this case during that time the evidence from the from the EMTs was that he asked to leave that he had communication with third parties the other people that were in the area and that he actually took out a cigarette and let it and smoked it he should have been allowed to leave but his body was detained for a period of time prior to the time they saw the firearm that is a Fourth Amendment violation and requires suppression of the evidence the evidence was that it was some there was at least a between the time he had calmed down I think this was it was Murphy's testimony from the time he had calmed down to the time they saw the butt of the firearm there was at least a 20 to 30 second interval in that in that matter what now say that again from the from the calm down to the time he calmed down and and was asked and they the testimony was that it was at least a 20 to second 30 30 second interval I would submit that it had to have been at least that amount because they also testified that he had a conversation with third parties during that time he lit and smoked him was smoking a cigarette well and then he asked to leave but the point is you don't have any problem with the EMS being notified that there was something wrong with what was found and the EMTs coming to the scene and you know truth is once they're on the scene they aren't going to just let you go or or leave until they know what's going on it's a liability situation that's where I have the problem I don't have a problem with them being called I don't have a problem with them coming on the scene but once once he was revived once he was lucid once he asked to leave they I don't think that there's anything in the record that supports the theory that they were allowed to keep him there while they conducted further investigation but don't they have an obligation as Judge Daughtry said to make certain that medically he's able to leave and you're saying that he talked to third parties he smoked a cigarette I'm not sure under their call they have to be able to observe their protocol in terms of you know examining and checking the person out because if they if they once he smoked a cigarette and talked to third parties if they'd let him up and let's say he got out of the car and then he fell and hit his head on the concrete people have said you had an opposite an obligation to observe him a reasonable period of time to make sure that he was medically okay I and the they indicated that when he was talking with third parties that he was actually lucid they actually said it was conversation that they could understand so they the question that the question becomes is there anything in the record that supports that they had a requirement to keep him there until they found X Y or Z and we don't even know what that is in the record the XYZ what they were going to find but oh that overbearing his his right to leave when he requests to do so but isn't the testimony 30 seconds 20 30 seconds at least at least that's the testimony isn't there something in the record that indicates that the the weapon came to their attention that's what we're talking about is the weapon yes one that came to their attention just sort of incidentally they weren't going through the car looking for evidence that's true so so the only question is at the time they saw the butt of the weapon did they have a right to continue to seize him at that point and and I would I cited the Bonilla case to the court in my reply brief that says you know it doesn't the 20 30 seconds 10 seconds five minutes there is no de minimis exception to the Fourth Amendment and I know my time is very much up but hey no well you're doing a great job answering our questions so thanks a lot as always mr. Glassman one more time yeah absolutely may it please the court Ben Glassman on behalf of the United States I'd like to talk through a little bit how exactly this issue of the picture arose at trial I think that that will help answer the constitutional issue about whether this particular evidence meaning the picture of the be excluded or that the other guns would have to come in and will also help I think clarify my friend's argument about opening the door because I I think the way his argument proceeds it's actually backwards what happened is that there was a motion to suppress the results of the search of the apartment the government said we're not going to use that evidence and so the trial proceeded with neither party making reference to what was found at the apartment the defendant gets up to testify in his own defense after the government is rested the defendant then testifies and during his direct examination says that he had to be begun in his pants and that's what he was using to scare the victim he does not say is not asked anything about whether he had a BB gun at his house or whether the year was a search of his house where a BB gun was found or anything like that and for very good reason because if he had been asked that that would then open the door for the government to come back and say actually it's not like you just had a BB gun at your house you got a ton of guns at your house so you can't try to mislead the jury into thinking that you only have a BB gun so obviously that's what you were carrying so he didn't try that then the government attorney attorney gets up to cross-examine him somewhere at the end of the government attorneys cross-examination I said so where is this BB gun obviously not recalling that in fact a BB gun was among the guns that was see was among the things that was seized at oops oops is right and this is I mean you can read what the district court I think in the sidebar at 754 to 755 does a pretty good job taking note for the court for this court because I obviously we can't see from the transcript what the reaction on everybody's face was at that time but the so the government asked so where is this BB gun and the defendant answers you've got it you came and searched my house and that police officer that testified he's got it he took it it was at that point that the government requested a sidebar during its cross-examination of the defendant at before it was done cross-examining defendant and the government then comes over and says hey court you know we we weren't going to get out of our agreement not to use that other evidence and the defense counsel says quite properly no you can't get out of it because you stepped in that I didn't ask the question you did and the court says that's right and I think that that's fine we're gonna let that stand but you can't argue in closing that that was the only thing that was seized because then you'll be and the court says so I've closed this door it was at that point that defense counsel then says well wait a minute I want to actually show a picture because because if I don't introduce the evidence the jury will infer that my client was lying not that to corroborate his his testimony his response and that's where I say the court gave some good comments to give this court a flavor of the court says anybody that saw mr. Springer's reaction knows the jury believes they found a gun anybody that was watching mr. Springer's conversation with Miss Deering and watched the transaction realizes they found a BB gun in the house but if you start asking questions about what was at the house then it's fair for them to ask is that all they found so if the defense then wanted to and that's at 754 and it goes on to 755 where again defense counsel emphasizes that the reason that he wants now to show this picture is not in support of the defense that the defendant actually was using a BB gun when he committed it but rather just to show that he was not lying in response to the government's question well even though even though the record says that you know by the faces and the expressions it was obviously that was found this that's not record evidence is it well actually I think is that record evidence what that's not evidence but that is why when we're talking about things like opening the door and that's those are calls that are within the district courts discretion for precisely I think it's evidence it's explanations of the district court state of mind exactly I mean the district way in the district yeah and I think it's just right it's relevant to show what the what the jury saw what the district court saw but I guess my point is twofold first is that the defense counsel makes quite clear that he's not and the way that this transpired makes quite clear that there was no effort no interest no attempt to introduce a picture of the BB gun or ask questions about the BB gun as recovery from the apartment during the that's logical though because you all have this agreement that you weren't gonna do that and then the government said where is this BB gun that's right that's right so then based on that defense wants to introduce a picture maybe get a stipulation that some gun was found or something like that I guess well they got the stipulation they did get the stipulation I mean that was the fallback so can I just make sure I'm understanding something is the point of what you're saying that this idea of putting pictures next to each other to show the BB gun was the gun allegedly used against the victim was a theory that was not put in front of the district court correct not at all no there is I mean the the defense counsel was explicit that the purpose of doing this was so that the jury wouldn't get the impression that the defendant was lying when he said that they recovered the BB gun from his apartment that's what counsel said now as to that point as judge Daughtry mentioned during my colleagues argument judge Donald just mentioned the district court did give their parties agreed there was a stipulation given in fact a black BB gun was found at the apartment so that was supposed to take care of the problem about establishing that his client wasn't that it had been found in his apartment exactly yeah and yeah the district court says to my mind that takes care of that problem well if that took care of the problem I guess the only question I would have is what harm was there then and just showing the jury the picture why why resist that why not just showing the picture and move on yeah I we don't know we don't know okay we don't know I mean I think the suggestion the way that this as I read the transcript of the sidebar and then the out-of-the-presence of the jury in court after the lunch recess was that there was some concern that the the way this was going to go out was to to suggest that all that was found was a BB gun you know so that's why the one prosecutor says it's sidebar I think it's improper characterization that he only carries BB guns I think that was the concern that the district court was trying to make sure that the door was not then open further in terms of needing for the government to rebut that by showing all the other guns well let me just clarify one other yes thing so leading up to what's here in the record in 754 55 yeah was it the defendants testimony and I have not read the transcript I'll continue was it the defendants testimony that what he used on the night of the carjacking was not the gun that was found in the stolen car the night he was detained arrested whatever but was in fact just a BB gun yes okay that was the defendants testimony although I will say Judge Daltrey that it wasn't the defendants testimony was not that I had a BB gun I took it and I stuck it to his temple and then I stuck it in his side the defendants testimony was I had a BB gun in my pants I raised my shirt and showed it to him and that was it I didn't take it out and in fact that then comes up in closing arguments because again with respect to the centrality of that particular piece of evidence versus his testimony that he had the BB gun the defense did argue that hey he testified he used a BB gun you've heard that there he has a BB gun that was what he did the government argued if you listen to his testimony he said that he never he didn't take out the BB gun and stick it on his temple so how on earth would the victim have seen the barrel if it was stuck in his pants okay you know the problem may be that the both of you are extremely good appellate advocates too bad you didn't try the case it might have been might have gone a little the whole thing there might not have been an oops there might not have been a this whole problem anyway I'm sorry well we have to be careful with that line of argument sometimes lawyers say I wish we'd had another panel so okay so I don't think that it was central which is the evidence given his testimony given the stipulation what do you have to say about the Fourth Amendment argument sure so I agree with much of the framework by which he comes at the issue really the only question I guess is when the firefighters drove up and they were finally able to revive the apparently drive off the second he said oh no I'm okay you know there's no authority that supports that and on the contrary there are plenty of cases that say that when firefighters or police officers or whoever encounter a dangerous situation they can stay there to make sure that there's not a that they drove up I mean I believe the way that the defense counsel characterized the defendant in closing argument was that he was ridiculously passed out at the wheel of a car and had been well they I'm quite sure they weren't gonna let him drive off in that car right and without knowing that he was not a danger well they actually testified that there was testimony that they had less you whether he was completely drunk completely on drugs and they had to figure that out and in the 20 or 30 seconds between the time that he apparently says I'm fine and they saw the gun excuse me I I don't believe there's anything that establishes that as a matter of law they knew that he was not dangerous not and it was fine for him to drive off I do think that Judge Donald's totally right that would be a dereliction of duty to let him drive off and drive right into somebody if he was totally drunk as as in fact he was I mean there was an empty bottle of vodka in the car so so I think that the law simply does not support the proposition that as soon as a passed out drunk person is revived the police officers or firefighters have a constitutional obligation to let him drive off no matter what the condition even what condition he before they're able to ascertain that it's safe I don't think there's any further disagreement between the parties on that point thank you okay your honor if I might actually with the brief time I have left I did want to make two quick points that were not brought up in my colleagues argument that were in response to a couple of things in his reply brief realizing that I'm opening the very brief I just wanted to point out with respect to the very last point the aligned point my colleagues reply brief I think proves our point on at least as to the plain air part because he says that the jury certainly could have understood could have believed that the defendant was simply showing the BB gun although disbelieved that it was a BB gun and thought it was an actual gun well if you show it that is brandishing so I I think that that falls within the definition of brandishing so I think that the fact of brandishing was undisputed by anybody at the trial so that's why I think that's certainly under cotton at least the fourth prong of plain air would not require reversal of the imposition of the mandatory minimum here and then with respect to the argument about 404 B evidence there's an assertion on page four of the reply brief that anytime you're talking about evidence that would itself constitute some other crime that is necessarily or by definition 404 B and I think that that's incorrect I think that there are plenty of cases out there that say that when you're offering evidence that's intrinsic to the crime charge that is not 404 B evidence regardless whether it is itself some other criminal conduct thank you mr. Glassman mr. Shad yes even though the judge did not permit the photo of the BB gun to be shown since the judge did struck the jury about it but the stipulation I guess that there was a BB gun down what's what's what how is your client harmed exactly me even if we determine this era it'd be harmless era let me make sure because the the stipulation was entered into if you look at page 762 page ID 762 the defense counsel is clear that he's only entering into this stipulation because he feels he's forced to because of the district court's decision that if you if you introduce this picture of the BB gun I'm going to allow in all those other guns that were found at the apartment so it was a stipulation but it was a stipulation that was the lesser of many evils challenging the validity of the stipulation no but I'm just explaining why it why there was a stipulation in the first place but but you told us that that you wanted the jury to know that a BB gun was found because the government said where's the BB gun and so this stipulation seems to answer that question well what we really want wanted was that we wanted the BB gun they were that we wanted them to see the BB gun because it looks like what mr. Gore testified to well you're gonna have to say that mr. Glassman was not accurately characterizing the record when it comes to Overton's counsel below which was that this was about whether he lied well he he that argument that's that's accurate he made that argument about whether or not he was lying about it but again the the that argument and is overlooking the fact that the government opened the door and this court has a lot of precedent on what opening the door means and and I cited that for instance I you can keep going down this road if you want but it's not answering my point if the he got that that was solved and you know if you want to make a you know a different argument it strikes me as becoming a plain-air argument because if it wasn't presented to the district court it's not right to reverse the district court unless plain-air shown we don't know that the the defense counsel wouldn't have attempted to present a picture of that of that BB gun during redirect in any event we don't know that depending on how cross-examination went what is that the only thing the only thing we do know is that during cross-examination they clearly opened the door to allowing a picture of that BB gun and and they and so what we're having here is the government opens the door to something that they had already agreed to say you're right they open the door to letting the picture in to make it really clear that he didn't lie yes but that's the point about not lying not to prove the match this this appellate theory I disagree because the only issue in the entire case was was it a BB gun or a firearm that was the only issue before the jury that that that was the only thing that they needed to decide was it was it was it a BB gun or was it a firearm and in so a picture again if you take a look at the picture of the two items a jury taking a look at a picture of the BB gun which they now admit that that he had let me ask the question this way what's your take let's just assume the only thing you were arguing today was the picture was really important to prove he didn't lie when he said he had a BB gun mm-hmm what would your theory be today given that there ultimately was a stipulation the jury was told there was a black BB gun what would you what would you say about that if it if that was the if that was my only argument that it was to prove that he wasn't lying obviously the stipulation would blunt that significantly right there wouldn't really have to admit that there really wouldn't be an theory that wasn't argued below which is a great theory I really admire you for it but I can't agree that it wasn't argued below because it was the entire defense it was in relation to why we want the picture and it wasn't have to connect up evidentiary rulings to the theory in my the theory that you were connecting this evidentiary ruling to was credibility not this other theory of the defense right well but the but the the whole theory of the defense was that was that it was a BB gun so that ran throughout throughout the entire process implied I guess you would say yes all right okay thank you all right well listen it's a great day when mr. Shad mr. Glassman are here so thank you to both of you I really you're always really helpful when you guys are arguing so thanks a lot thank you case will be submitted and the clerk may call the last